United States District Court
Southern District of Texas
**ENTERED**
August 07, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**LAREDO DIVISION**

| | | |
|---|---|---|
| **JUAN SEBASTIAN CHAVEZ VELASCO,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 5:26-CV-00491** |
| | § | |
| **TODD M. LYONS, *et al.*,** | § | |
| | § | |
| **Respondents.** | § | |

**MEMORANDUM AND ORDER**

Pending before the Court is Petitioner Juan Sebastian Chavez Velasco's ("Petitioner" or "Mr. Chaves Velasco") Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, (Dkt. 1), challenging the lawfulness of his detention by Immigration and Customs Enforcement (ICE) officials with the Department of Homeland Security (DHS).

For the reasons set forth below, Petitioner's Petition for Habeas Corpus, (Dkt. 1), is **GRANTED IN PART**. Respondents' Response to the Petition for Writ of Habeas Corpus and Motion to Dismiss, (Dkt. 12), and Respondents' Updated Opposed Motion to Dismiss Petition for Writ of Habeas Corpus as Moot, (Dkt. 19), are **DENIED**.

## Background

### A. Deferred Action for Childhood Arrivals

On June 15, 2012, the Secretary of Homeland Security announced the program for Deferred Action Against Childhood Arrivals (DACA). Memorandum from Janet Napolitano, Sec'y of Dep't of Homeland Sec., *Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children* (June 15, 2012), https://perma.cc/VCT2-GACR (hereinafter

"DHS DACA 2012 Memo"). This program allows people who came to the United States as children to request employment authorization and deferred removal action for a period of two years. *See id.* A recipient may apply for renewal of their DACA status before the two-year expiration at any time, but the Government recommends that requests be submitted four to five months in advance. *Consideration of Deferred Action for Childhood Arrivals (DACA)*, U.S. Citizenship and Immigration Services, https://perma.cc/E45Z-HA7G (last updated Jan. 24, 2025). The United States Citizenship Immigration Services (USCIS) has sole discretion to grant or renew DACA if the noncitizen meets certain criteria.[1] *Id.*

The initial purpose of the program was to protect "young people who were brought to this country as children and know only this country as home," in part because they "lacked the intent to violate the law." DHS DACA 2012 Memo. As of 2024, an estimated 834,877 people have been authorized to live and work in the United States under DACA since its creation in 2012. *Deferred Action for Childhood Arrivals (DACA): An Overview*, American Immigration Council (July 2024), https://perma.cc/Y583-U3Y7. Additionally, almost 30,000 DACA holders worked in health care in the United States as of 2021. (Dkt. 1 at 8) (citing *Deferred Action for Childhood Arrivals (DACA): An Overview*, American Immigration Counsel (Sept. 30, 2021), https://perma.cc/GVZ7-VKBF). Despite ongoing litigation, USCIS continues to accept and process DACA renewal

[1] The criteria requires that the noncitizen (1) be under the age of 31 as of June 15, 2012; (2) came to the United States before reaching their 16th birthday; (3) continuously resided in the United States since June 15, 2007, up to the time of filing the DACA request; (4) was physically present in the United States on June 15, 2012, and at the time of filing their DACA request; (5) had no lawful immigration status on June 15, 2012, and at the time of filing the DACA request; (6) enrolled in school, graduated, obtained a certificate of completion from high school, obtained a General Education Development certificate, or are an honorably discharged veteran; (7) has not been convicted of a felony, significant misdemeanor, or three or more misdemeanors, and does not otherwise pose a threat to national security or public safety. *Consideration of Deferred Action for Childhood Arrivals (DACA)*, U.S. Citizenship and Immigration Services, https://perma.cc/E45Z-HA7G (last updated Jan. 24, 2025).

requests in all states, including Texas. *Consideration of Deferred Action for Childhood Arrivals (DACA)*, U.S. Citizenship and Immigration Services, https://perma.cc/E45Z-HA7G (last updated Jan. 24, 2025).[2]

**B. Petitioner's Background**

Mr. Chaves Velasco is a citizen of Colombia who has been living in the United States for 27 years. (Dkt. 1 at 5.) On July 23, 1999, Petitioner entered the United States with his parents on a B2 visitor visa when he was eight years old. (*Id.*) Petitioner's family applied for asylum, which was denied by the Immigration Court in 2004, and the denial was affirmed by the Board of Immigration Appeals (BIA) in 2005. (*Id.*) In 2012, Petitioner applied for DACA, and his application was approved by the USCIS. (*Id.* at 6.) Over the years, he has successfully renewed his DACA status and work authorization multiple times. (*Id.*) Most recently, Petitioner applied to renew his DACA on November 12, 2025, four months before his DACA would expire on March 10, 2026. (*Id.*) With degrees in biology and clinical laboratory science, Petitioner previously served on the front lines of an emergency room during the Covid-19 pandemic and has worked as a medical laboratory scientist. (Dkt. 5, Attach. 7 at 1.)[3] Meanwhile, Mr. Chaves Velasco married his

---

[2] On August 30, 2022, DHS published the DACA Final Rule with the intent to preserve the DACA policy in place of the DACA guidance set forth in the 2012 Memorandum. Deferred Action for Childhood Arrivals (Final Rule), 87 Fed. Reg. 53152 (Aug. 30, 2022); *see also* 8 C.F.R. § 236.21–25. Since then, a number of states have brought ongoing challenges to the Final Rule under the Immigration and Nationality Act and the Take Care Clause. *See Texas v. United States*, 549 F. Supp. 3d 572 (S.D. Tex. 2021). Recently, on January 17, 2025, the Fifth Circuit affirmed a district court's ruling that the Final Rule is substantively unlawful but limited its holding before remanding the case. *See Texas v. United States*, 126 F.4th 392 (5th Cir. 2025). First, the Fifth Circuit severed the provisions granting forbearance from removal from the provisions conferring work authorization. *Id.* at 420. Then, the Fifth Circuit maintained the district court's stay of the Final Rule's vacatur for all existing DACA recipients and limited the nationwide injunction barring approval of new DACA applications to Texas after finding it was the only state that demonstrated actual injury. *Id.* at 421–22.

[3] The Court will use "Attachment" to refer to sub-filings in accordance with official docket entries. The Court will use the page numbers auto-generated by CM/ECF in citations to the docket entries.

United States citizen wife on February 18, 2025. (Dkt. 1 at 6.) He has three children, including a newborn who spent weeks in a Neonatal Intensive Care Unit (NICU). (*Id.*; Dkt. 13, Attach. 4.)

On February 18, 2026, Mr. Chaves Velasco was detained while he was driving to deliver fresh milk to his 12-day-old daughter as she was receiving treatment in an isolation chamber at the NICU. (Dkt. 5, Attach. 7 at 1.) He had been unable to hold his daughter who was born prematurely. (*Id.* at 2.) When Petitioner was ordered out of his vehicle by ICE, he was on the phone with his wife, who claims that her husband told ICE that he had valid DACA and that the agents said they did not care. (Dkt. 13, Attach. 4.) He never made it to the hospital that day because he was taken into custody at the Webb County Detention Center. (Dkt. 1 at 1; Dkt. 20 at 1.) Petitioner's DACA was valid at the time he was detained but expired while he was in custody on March 10, 2026. (Dkt. 1 at 6.) His pending DACA renewal application could not be approved by USCIS while he was in immigration detention. (*Id.*; Dkt. 13 at 8); *see* 8 C.F.R. § 236.23(a)(2).

**C. Procedural Background**

Petitioner filed his Petition for Writ of Habeas Corpus on March 25, 2026. (Dkt. 1.) Petitioner argues that his detention while he held valid DACA is unlawful and violates the Fifth Amendment Due Process Clause, the Fourth Amendment, the Administrative Procedure Act, and the *Accardi* Doctrine. (Dkt. 1 at 10–14.) He initially asked the Court to order his immediate release and prohibit his redetention for thirty days to cure the lapse of his DACA. (*Id.* at 15; Dkt. 13 at 17.) The Court ordered Respondents to show cause and respond to Petitioner's petition on or before April 1, 2026. (Dkt. 6.) Respondents filed a timely response addressing Petitioner's claims and arguing that the Court should dismiss the petition for lack of subject matter jurisdiction or for failure to state a claim. (Dkt. 12.) On April 7, 2026, Petitioner filed a reply to Respondents'

response arguing that the Court has jurisdiction and maintaining that his detention while he held valid DACA violated his constitutional and statutory rights. (Dkt. 13.)

On May 18, 2026, the Court ordered the Parties to file a status update on Petitioner's case, including whether Petitioner remains in detention. (Dkt. 14.) The next day, Respondents filed a timely status update claiming that the case is now moot because Petitioner was released from immigration detention on or about May 15, 2026, as part of the Alternatives to Detention (ATD) program. (Dkt. 15.) Petitioner filed a status report the same day confirming that he was released from detention but arguing that the Court should not dismiss the petition because he remains in custody through unlawful electronic monitoring. (Dkt. 16.) On June 13, 2026, Petitioner filed a Motion to Issue Decision, notifying the Court that Petitioner's DACA was renewed until May 17, 2028, and moving for the Court to immediately restore the freedom Petitioner enjoyed prior to his unlawful detention. (Dkt. 17.)

On June 16, 2026, the Court granted Respondents leave to file an updated motion to dismiss. (Dkt. 18.) Respondents filed an updated motion to dismiss, arguing that the petition is moot because Petitioner has been released from custody.[4] (Dkt. 19.) Petitioner filed a reply to Respondents' updated motion, maintaining that the petition is not moot because he remains in the custody of the Government. (Dkt. 20.) Because Petitioner was not subject to any order of supervision or electronic monitoring prior to his unlawful detention, Petitioner requests that the Court restore his freedom and order Respondents to remove his ankle monitor and all reporting requirements. (*Id.* at 4.)

## **Legal Standard**

[4] The Court will consider Respondents' arguments in their original motion to dismiss, (Dkt. 12), and their updated motion to dismiss, (Dkt. 19).

**A. 28 U.S.C. § 2241**

A district court may grant a writ of habeas corpus if a petitioner is in federal custody in violation of the Constitution or federal law. 28 U.S.C. § 2241. "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). 28 U.S.C. § 2241(c)(3) authorizes "any person to claim in federal court that he or she is being held 'in custody in violation of the Constitution or laws . . . of the United States.'" *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). Accordingly, 28 U.S.C. § 2241 confers jurisdiction upon the federal courts to hear challenges to the lawfulness of immigration-related detention. *Id*. (citing 28 U.S.C. § 2241(c)(3)); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003); *Baez v. Bureau of Immigr. & Customs Enf't*, 150 F. App'x 311, 312 (5th Cir. 2005) (unpublished); *Oyelude v. Chertoff*, 125 F. App'x 543, 546 (5th Cir. 2005) (unpublished).

**B. Federal Rule of Civil Procedure 12(b)(1)**

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The burden of establishing subject-matter jurisdiction rests on the Petitioner. *See Hartford Ins. Group v. Lou–Con Inc.*, 293 F.3d 908, 910 (5th Cir. 2002); *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980) (citations omitted). "[A] motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citations omitted).

## <u>Discussion</u>

The Court first evaluates whether it has subject matter jurisdiction over Petitioner's claims, including whether the petition is moot because Petitioner has been released from detention. Finding that the Court has jurisdiction, the Court addresses whether Petitioner's DACA status made his initial detention unlawful under the Fifth Amendment. After determining that Respondents' detention of Petitioner violated his due process rights, the Court turns to whether the continued supervision and electronic monitoring of Petitioner is unlawful while his DACA is valid.

**A. The Court's Subject-Matter Jurisdiction**

As an initial matter, the Court finds that Petitioner remains in immigration custody for the purposes of his habeas petition due to the restraint on his liberty. Because Petitioner suffers the collateral consequences of being subject to electronic monitoring and ongoing supervision, there is relief to be effectuated. Thus, the Court finds that it has subject matter jurisdiction because the petition is not moot and the Court is not otherwise stripped of jurisdiction to hear Petitioner's claims.

*1. The Habeas Petition is not Moot*

The Court considers whether Petitioner's habeas petition should be denied as moot given his release from detention and subsequent placement on supervision. After Petitioner filed this habeas petition, (*see* Dkt. 1), he was released from Webb County Detention Center on or about May 15, 2026. (Dkt. 15 at 1; Dkt. 16 at 1.) Petitioner was placed on an Order of Supervision and ATD with an ankle monitor. (Dkt. 15 at 1; Dkt. 16 at 2.) Petitioner argues that he remains in Respondents' custody through unlawful monitoring and requests that the Court rule on the merits of his petition. (Dkt. 16 at 1; Dkt. 17 at 1–2; Dkt. 20 at 2.) Respondents' position is that the Court lacks jurisdiction because Petitioner's release renders the petition moot as he is no longer in the Government's custody. (Dkt. 19 at 2–3.) Respondents claim that Petitioner cannot challenge the

conditions imposed on his release through a habeas petition because "[h]abeas only exists to 'grant relief from unlawful imprisonment or custody and it cannot be used properly for any other purpose.'" (*Id.* at 3) (quoting *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976)).

It is well established that custody extends beyond physical detention such that a petitioner remains in immigration custody when their liberty is restrained. *See Merlan v. Holder*, 667 F.3d 538, 539 (5th Cir. 2011) ("Although an applicant need not be in actual physical custody to pursue a habeas action, there must be some type of restraint on the liberty of a person."). District courts have found that ankle monitoring and reporting requirements constitute immigration custody for the purpose of filing a habeas petition under 28 U.S.C. § 2241. *See Vargas Istamo v. Perez*, 2026 WL 1458583, at *1 (S.D. Tex. Feb. 3, 2026) ("Even though [the petitioner] has been released, [he] remains in immigration custody for Section 2241 purposes because [his] liberty is restrained."); *see also Montes Aguillon v. Bondi,* 2026 WL 531899, at *2 (W.D. Tex. Feb. 25, 2026) (collecting cases). Because Petitioner's liberty is restrained through an order of supervision and ankle monitor, he remains "in custody" for the purposes of Section 2241 and the Court retains jurisdiction over Petitioner's habeas claims. *See Vargas Istamo*, 2026 WL 1458583, at *1 (holding the court retained jurisdiction despite the petitioner being released from detention because the petitioner was subject to an order of supervision). Finding that Petitioner remains in custody, the Court turns to Respondents' argument that the case is moot because Petitioner was released from detention.

"A case becomes moot only when it is impossible for a court to grant 'any effectual relief whatever' to the prevailing party." *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012) (quoting *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000)) (citation modified). In the immigration context, release from custody may render a habeas petition moot. *See Rocha v. Mayorkas*, 579 F. Supp. 3d 923, 929 (S.D. Tex. 2022); *Lemons v. Swann*, 412 F. App'x 672, 673

(5th Cir. 2011) ("In the context of habeas petitions . . . this court has dismissed a petitioner's appeal as moot upon the petitioner's release from custody"). However, there are exceptions to mootness when the noncitizen can show that they would suffer collateral consequences because of the challenged detention or when there is a possibility for the challenged detention to recur in the future. *See, e.g., Umanzor v. Lambert*, 782 F.2d 1299, 1301 (5th Cir. 1986); *Rosales-Garcia v. Holland*, 322 F.3d 386, 395–97 (6th Cir. 2003). Because individuals may face collateral legal restraints on their liberty resulting from the original unlawful detention, habeas relief, although narrow, is not limited to immediate release from illegal custody. *See Zalawadia v. Ashcroft*, 371 F.3d 292, 300 (5th Cir. 2004) ("Supreme Court jurisprudence in this field indicates that habeas relief relates directly to the underlying nature of the writ itself—undoing current or future legal restraints on a person's freedom flowing from an illegal detention.").

Prior to his detention, Mr. Chavez Velasco has lived freely in the United States for 27 years, with 14 of those years under the benefits of DACA. (*See* Dkt. 1 at 5–6.) He is now subject to an order of supervision and electronic monitoring under the ATD program. (Dkt. 16 at 2, Attach. 2 at 1.) Because of an ankle monitor, Mr. Chaves Velasco is unable to exercise, sleep peacefully, and wear certain clothes. (*Id.* at 2.) He also suffers physically and psychologically because of the electronic monitoring. (*Id.*) Therefore, Petitioner endures significant collateral consequences from his detention that prevent his petition from becoming moot. *See Barrios-Martinez v. Bondi*, 2026 WL 964318, at *2 (W.D. Tex. Apr. 8, 2026) (finding that the petitioners' ankle monitors were sufficient "collateral consequences" to keep the petition from becoming moot). Habeas remains the proper vehicle to challenge the lawfulness of his custody because there is relief that the Court can effectuate with regards to the collateral consequences of the challenged detention. *See Montes*

*Aguillon,* 2026 WL 531899, at *2 (citing cases "ordering removal or prohibiting the imposition of electronic monitoring devices as a form of habeas corpus relief").

2. *Jurisdiction-Stripping Provisions*

The primary federal habeas corpus statute confers federal subject matter jurisdiction over habeas petitions filed by noncitizens who claim they are being detained "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Zadvydas*, 533 U.S. at 687. However, the REAL ID Act of 2005 divested federal courts of jurisdiction over various important categories of immigration cases. *See* Pub. L. No. 109-13, Div. B, 119 Stat. 231 (2005); 8 U.S.C. § 1252. Specifically, district courts may not review challenges to final orders of removal or questions of law and fact "arising from any action taken or proceeding brought to remove an alien from the United States." *See* 8 U.S.C. §§ 1252(a)(5), (b)(9); *Texas v. United States*, 126 F.4th 392, 417 (5th Cir. 2025); *Moreira v. Mukasey*, 509 F.3d 709, 712 (5th Cir. 2007). Additionally, no federal court may review claims "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." 8 U.S.C. § 1252(g). But the Supreme Court has rejected a broad reading of these provisions, cautioning that "[i]nterpreting 'arising from' in this extreme way would also make claims of prolonged detention effectively unreviewable." *Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018). Therefore, federal courts retain "jurisdiction to review [a noncitizen's] detention insofar as that detention presents constitutional issues." *Oyelude*, 125 F. App'x at 546; *see also Nielsen v. Preap*, 586 U.S. 392, 401–02 (2019); *Maldonado v. Macias*, 150 F. Supp. 3d 788, 794 (W.D. Tex. 2015) ("[E]ven after the passage of the REAL ID Act, district courts retain the power to hear statutory and constitutional challenges to civil immigration detention under § 2241 when those claims do not challenge a final order of removal, but instead challenge the detention itself.").

Specifically, the Supreme Court and Fifth Circuit have indicated that § 1252(b)(9) "'does not present a jurisdictional bar' where those bringing suit 'are not asking for review of an order of removal,' 'the decision . . . to seek removal,' or 'the process by which . . . removability will be determined.'" *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020) (citing *Jennings*, 583 U.S. at 294–95); *see also Texas*, 126 F.4th at 417 (addressing Texas' challenge to the DACA program as a whole). The Fifth Circuit has further found that "where review of any agency determination involves neither a determination as to the validity of [an immigrant's] deportation orders or the review of any question of law or fact arising from their deportation proceedings, § 1252(a)(5) and (b)(9) should not operate as a bar to the district court's review." *Duarte v. Mayorkas*, 27 F.4th 1044, 1056 (5th Cir. 2022). Additionally, § 1252(g) "is designed to protect the discretionary decisions of immigration authorities in matters related to removal and deportation." *Id.* at 1055 (citing *Alvidres-Reyes v. Reno*, 180 F.3d 199, 201 (5th Cir. 1999)). The Supreme Court has reaffirmed that "[w]e did not interpret [§ 1252(g)] to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General. Instead, we read the language to refer to just those three specific actions themselves." *Jennings*, 583 U.S. at 294 (citing *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482–83 (1999)). Moreover, "Section 1252(g) does not bar courts from reviewing an alien detention order, because such an order, 'while intimately related to efforts to deport, is not itself a decision to 'execute removal orders' and thus does not implicate section 1252(g).'" *Cardoso v. Reno*, 216 F.3d 512, 516–17 (5th Cir. 2000) (citation omitted). For this reason, courts have found that § 1252(g) does not prevent them from reviewing challenges to custody brought by DACA and other deferred action recipients. *See Santiago v. Noem*, 2025 WL 2792588, at *3 (W.D. Tex. Oct. 2, 2025) (collecting cases).

Without citing any statutory authority, Respondents initially claimed that the Court does not have subject matter jurisdiction over Petitioner's DACA status while it remained pending. (Dkt. 12 at 2.) Although Petitioner did not request that the Court review his DACA status, his application has since been approved by USCIS and his status valid. (Dkt. 20 at 1.) Furthermore, while Petitioner has a final order of removal from 2005, Petitioner is not challenging any aspects of his underlying removal order or the decision by DHS to execute it. *See Sagastizado v. Noem*, 802 F. Supp. 3d 992, 1005 (S.D. Tex. 2025) (finding the Court had jurisdiction to hear the petitioner's claim challenging the lawfulness of his post-removal order detention). Therefore, nothing in 8 U.S.C. § 1252 strips the Court of its power to review Petitioner's constitutional claims that he was unlawfully taken into custody while his DACA was valid and the collateral restrictions on his freedom. *See Santiago*, 2025 WL 2792588, at *5; *Medina v. U.S. Dep't of Homeland Sec.*, 2017 WL 2954719, at *15 (W.D. Wash. Mar. 14, 2017), *report and recommendation adopted*, 2017 WL 1101370 (W.D. Wash. Mar. 24, 2017).

**B. Mr. Chaves Velasco's Detention While He Held DACA Was Unlawful**

Based on the information before the Court, there is no dispute that Mr. Chaves Velasco's DACA status was valid at the time of his initial detention on February 18, 2026. (*See* Dkt. 1 at 6; Dkt. 12 at 3, 5–6.) His DACA status expired on March 10, 2026, after he was in detention for 20 days. (*See* Dkt. 1 at 6; Dkt. 12 at 3.) Because Petitioner's DACA renewal could not be granted while he was in detention, it remained pending until he was released. (*See* Dkt. 1 at 6; Dkt. 12 at 3.) Petitioner's DACA was renewed in May of 2026, and he now has valid DACA through May of 2028. (Dkt. 20 at 1.) Respondents argue that Petitioner's DACA never prevented his arrest and detention because Petitioner's prior notice informing him that his DACA application had been approved states, "[d]eferred action is an exercise of prosecutorial discretion by USCIS not to

pursue the removal of an individual from the United States for a specific period. Deferred Action does not confer or alter any immigration status." (Dkt. 12 at 5.) Respondents claim that the approval notice makes no mention of protection from detention if immigration officials intend to detain a noncitizen for the purpose of removal until the DACA protection is terminated or expired. (*Id.*)

However, DACA grants a noncitizen the right to freely live and work within the United States without threat of deportation. While discretionary, DACA recipients come to rely immensely on these benefits. *See Texas*, 126 F.4th at 422 (noting the "immense reliance interests that DACA has created" due to its "profound significance to recipients and many others in the [now-twelve] years since its adoption") (citation omitted). Thus, DACA recipients have a constitutionally protected property interest in retaining the affirmative benefits that are guaranteed by their DACA status. *See Intriago-Sedgwick v. Noem*, 2025 WL 3688155, at *5 (D.N.M. Dec. 19, 2025), *report and recommendation adopted*, 1:25-cv-01065-MIS-LF, Dkt. No. 27 (D.N.M. Jan. 6, 2026) (collecting cases); *see also Santiago*, 2025 WL 2792588, at *10 ("Although DACA is a discretionary benefit, not an entitlement, once DACA is conferred, a recipient has a protected property interest in retaining that benefit.") (citations omitted)). As the Supreme Court has explained, DACA is not a "passive non-enforcement policy" but a "program for conferring affirmative immigration relief" that grants an interest in benefits, such as work authorization, Social Security, and Medicare, which "courts often are called upon to protect." *Regents*, 591 U.S. at 18–19 (citations omitted). Because DACA confers a constitutionally protected property interest, courts have found that a recipient of DACA must be provided with due process before their DACA is terminated. *See Santiago*, 2025 WL 2792588, at *10 (collecting cases). Similarly, DACA recipients also retain a cognizable liberty interest that stems from the guarantee that they may live

in the United States free from physical confinement and arbitrary civil detention. *See id.*, at *10–11 (finding that the DACA recipient had a cognizable liberty interest after living in the United States for 20 years). "A core benefit of DACA is that it allows recipients to live, study, and work in the United States without fear of arrest or deportation. It would be incongruous to find that DACA recipients acquire a constitutionally protected interest in their DACA benefit, but not one of its essential facets: their liberty." *Id.*, at *10. Accordingly, the affirmative benefits conferred by deferred action create a constitutionally protected property interest and give rise to a liberty interest that is protected by the Due Process Clause. *See Benitez-Umanzor v. Jackson Parish Corr. Ctr.*, 2026 WL 948795, at *2 (W.D. La. Apr. 8, 2026) (collecting cases).

Because of these constitutionally protected interests, courts have consistently granted deferred action recipients relief from detention and removal. *See Intriago-Sedgwick*, 2025 WL 3688155, at *5–6 (collecting cases and finding that the petitioner was unlawfully detained while she held valid DACA); *Gamez Lira v. Noem*, 2025 WL 2581710, at *3–4 (D.N.M. Sept. 5, 2025) (finding a likelihood of success on the petitioner's challenges to his detention because he was lawfully present in the country while his DACA status was active); *Sepulveda Ayala v. Bondi*, 794 F. Supp. 3d 901, 914 (W.D. Wash. 2025) (finding that "[th]e Government's position that it can grant deferred action while simultaneously ignoring it entirely in order to detain people would also create the kind of 'arbitrary imprisonment without law or the appearance of law' that violates due process") (citations omitted)); *F.R.P. v. Wamsley*, 2025 WL 3037858, at *3 (D. Or. Oct. 30, 2025) (finding that legal precedent strongly suggests that the government does not have "free reign" to detain a recipient of deferred action). While the Fifth Circuit has not explicitly addressed this question, the Sixth Circuit has recognized that arrest and detention of a DACA recipient is unlawful. *See Enriquez-Perdomo v. Newman*, 54 F.4th 855 (6th Cir. 2022). In *Enriquez-Perdomo*,

the Sixth Circuit considered a *Bivens* action brought by Enriquez-Perdomo, a noncitizen who entered the United States as a child, against the ICE officers who detained her. *Id.* at 858. After the creation of the DACA program in 2012, Enriquez-Perdomo was granted DACA status in March of 2013, and she continued to successfully renew her status over the years. *Id.* In August of 2017, she was arrested and detained by ICE without termination of her DACA status which was active until January of 2019. *Id.* at 858–60. Prior to reaching the merits of her claims, the Sixth Circuit established that Enriquez-Perdomo's removal order from 2004 was not subject to execution at the time of her detention because she had valid DACA status when ICE arrested her. *Id.* at 863. Specifically, the Sixth Circuit stated that "[w]hen she became a DACA recipient, she was granted 'affirmative . . . relief' from removal" and because the government did not terminate that relief, "Enriquez-Perdomo's arrest and detention despite that relief were unauthorized." *Id.* (citing *Regents*, 591 U.S. at 18.)

The Court agrees with the many courts that have found that a DACA recipient is granted affirmative relief from removal that prevents arrest and detention unless the Government lawfully terminates that relief. Here, Mr. Chaves Velasco has a protected property interest in his DACA status and a cognizable liberty interest in his freedom from physical confinement because he has been allowed to freely live, study, and work in the United States for 27 years, with 14 of those years under DACA. (Dkt. 1 at 11); *see also Santiago*, 2025 WL 2792588, at *10 (finding that the petitioner had a cognizable interest in her continued freedom from detention because she spent 20 years at liberty in the United States, with 13 of those years being with the Government's permission under DACA). He has been able to build a life with his United States citizen wife, two children, and a newborn baby, who depend on him significantly for emotional, medical, and financial support. (Dkt. 1 at 7, 11.) Because Mr. Chaves Velasco possessed valid DACA status at the time

of his arrest, Respondents could not deprive him of his freedom from detention absent lawful termination of his DACA. As such, the Court rejects Respondents' argument that Petitioner's initial detention was lawful under 8 U.S.C. § 1231 because Petitioner's DACA was active at the time of his arrest on February 18, 2026. (*See* Dkt. 12, Attach. 4 at 1.) Thus, he was unlawfully detained for 20 days while he held valid DACA status. *See Intriago-Sedgwick*, 2025 WL 3688155, at *5 (finding that the petitioner was detained for 97 days while holding DACA status in violation of the Due Process Clause despite the fact that her DACA may have later been terminated while she was in custody).

**C. Mr. Chaves Velasco's Continued Conditions of Supervision and Electronic Monitoring are Unlawful**

Although Petitioner was released from detention, Petitioner remains in custody through an order of supervision and ATD with an ankle monitor. (Dkt. 15 at 1; Dkt. 16 at 1–2.) Petitioner argues that such conditions are unlawful and requests that the Court restore him to the freedom he enjoyed before he was unlawfully detained on February 18, 2026, which did not include any reporting requirements or electronic monitoring of any kind. (Dkt. 16 at 3; Dkt. 17 at 2; Dkt. 20 at 4.) Respondents argue that it is within their authority to impose ATD restrictions on Petitioner because he has a final order of removal and no lawful immigration status. (Dkt. 19 at 3–5.) Respondents claim that district courts have found that electronic ankle monitoring of noncitizens with a final removal order is a reasonable restraint because it is rationally related to the government interest in reducing the number of absconders. (*Id.*)

Generally, the Government may impose conditions of supervised release on a noncitizen who is released from custody under 8 U.S.C. § 1231, pending the noncitizen's removal. Under § 1231(a)(3), "[i]f the alien does not leave or is not removed within the removal period, the alien,

pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3). The corresponding regulations defer to DHS's Headquarters Post-order Detention Unit (HQPDU) agency to set reasonable conditions of release "necessary to ensure public safety and guarantee the alien's compliance with the order of removal." 8 C.F.R. § 241.13(h)(1). To support their position, Respondents cite several cases from district courts in this Circuit that have concluded that electronic monitoring of noncitizens with final removal orders is reasonably related to a legitimate government interest in preventing absconding pending execution of removal. (Dkt. 19 at 3–5) (citing *Gozo v. Mayorkas*, 2024 WL 2027510 (S.D. Tex. Mar. 4, 2024); *Iruene v. Weber*, 2012 WL 5945079 (W.D. Tex., Aug. 1, 2012); *Zavala v. Prendes*, 2010 WL 4454055 (N.D. Tex. Oct. 5, 2010); *Ahmed v. Tate*, 2020 WL 3402856 (S.D. Tex. June 19, 2020)).

However, the statute does not authorize supervisory authority over a noncitizen with valid DACA. Looking at the statutory text, § 1231(a)(3) only authorizes supervision when the noncitizen is "pending removal." 8 U.S.C. § 1231(a)(3) ("the alien, *pending removal*, shall be subject to supervision under regulations prescribed by the Attorney General" (emphasis added)); *see also Calderon v. Sessions*, 330 F. Supp. 3d 944, 959 (S.D.N.Y., 2018) ("The INA authorizes supervision only when the alien subject to a final order of removal is 'pending removal.'"). Because the statutory text requires that the noncitizen be "pending removal," the statute is not applicable to Petitioner. *See id.* Mr. Chaves Velasco has lived freely in the United States for over two decades despite having a final removal order from 2005. (Dkt. 1 at 5–6, 11.) For 14 of those years, Respondents expressly granted deferred action on Petitioner's removal, and just one month ago, extended this guarantee for another two years by renewing his DACA until May of 2028. (*Id.* at 6; Dkt. 17, Attach. 1; Dkt. 20 at 1.) Respondents do not have the legal authority to effectuate

Petitioner's removal while he has valid DACA, also precluding the need to ensure compliance with his removal over. Therefore, Petitioner is not "pending removal" for the purposes of § 1231(a)(3) because of the deferred action on his removal and cannot be subject to conditions of supervision. *See Calderon*, 330 F. Supp. 3d at 959 (finding that the government did not have any supervision authority under § 1231(a)(3) because the petitioner's removal had been stayed and therefore was no longer "pending").

Even if the statute was applicable to Petitioner, the statute and corresponding regulations are unconstitutional as applied to a recipient of DACA. Respondents argue that DACA does not grant lawful immigration status, (Dkt. 19 at 4), but overlook that DACA grants affirmative relief from removal. *See Regents*, 591 U.S. at 18. As the Court has established, Mr. Chaves Velasco has a constitutionally protected property interest in his DACA status and a cognizable liberty interest in his freedom from physical confinement and restraint that extends to other restrictions on his liberty. *See Intriago-Sedgwick*, 2025 WL 3688155, at *5; *Santiago*, 2025 WL 2792588, at *10. The imposition of conditions of supervision, such as electronic monitoring, violates due process by unlawfully infringing on these constitutionally protected rights. Absent lawful termination of his DACA, Respondents cannot deprive Mr. Chaves Velasco of his freedom and have violated his due process rights by keeping him in custody through the imposed reporting requirements and electronic monitoring.

Thus, Petitioner has demonstrated a concrete, ongoing deprivation of his protected liberty interest in his freedom from physical restraint in violation of his due process rights. The Court finds that the appropriate remedy for the due process violation is immediate release from custody, such that Petitioner is not subject to any conditions of supervision, reporting requirements, or electronic monitoring. *See Garcia Lanza v. Noem,* 822 F. Supp. 3d 326, 333–34, 340 (E.D.N.Y.

2026) (ordering that the conditions of release imposed by ICE, including an ankle monitor and curfew, were unauthorized and not binding on the petitioner who was unlawfully detained when he was a beneficiary of deferred action under his Special Immigrant Juvenile Status and then released under ATD); *see also Montes Aguillon,* 2026 WL 531899, at *2 (citing cases granting habeas corpus relief prohibiting the imposition of electronic monitoring).

## CONCLUSION

For the foregoing reasons, Petitioner's Petition for Writ of Habeas Corpus, (Dkt. 1), is **GRANTED IN PART**. Petitioner's Emergency Motion for Preliminary Injunction and Temporary Restraining Order, (Dkt. 2), is **DENIED AS MOOT**. Petitioner's Motion to Issue Decision, (Dkt. 17), is **GRANTED IN PART**. Respondents' Response to the Petition for Writ of Habeas Corpus and Motion to Dismiss, (Dkt. 12), is **DENIED**. Respondents' Updated Opposed Motion to Dismiss Petition for Writ of Habeas Corpus as Moot, (Dkt. 19), is **DENIED**.

1. Respondents are **ORDERED** to **IMMEDIATELY RELEASE** Petitioner from custody, including from the conditions of supervision imposed on him. Respondents are further **ORDERED** to **REMOVE** any and all electronic monitoring devices from Petitioner and to submit a status report to the Court confirming their removal **on or before August 12, 2026**.

2. Respondents are **ENJOINED** from imposing any conditions of supervision, reporting requirements, or electronic monitoring on Petitioner while his DACA status is valid.

3. Respondents are further **ENJOINED** from detaining Petitioner while his DACA status is valid.

4. Respondents must return any and all identification documents and personal belongings taken from Petitioner at the time of apprehension or during detention.

IT IS SO ORDERED.

SIGNED this August 7, 2026.

Diana Saldaña
United States District Judge